UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ASHLEY LYNN LANG,

                          Plaintiff,

                                                              **Hon. Hugh B. Scott**

              v.                                              12CV992A

                                                              **Report
                                                              and
CAROLYN W. COLVIN, Acting                                     Recommendation**
Commissioner of Social Security[1],

                          Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 12 (defendant Commissioner), 13 (plaintiff)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to disability insurance benefits and Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff, Ashley Lynn Lang ("Lang" or "plaintiff"), filed an application for disability

insurance benefits on August 15, 2008. That application was denied initially and on

reconsideration. The plaintiff appeared before Administrative Law Judge Jennifer Whang

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social
Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Colvin is substituted for
now former Commissioner Michael J. Astrue as Defendant in this action; no further action is
required, 42 U.S.C. § 405(g).

("ALJ"), who considered the case <u>de novo</u> and concluded, in a written decision dated September 22, 2010, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on August 17, 2012, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on October 17, 2012 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 12, 13). The motions were submitted on papers (Docket No. 8).

## FACTUAL BACKGROUND[2]

Plaintiff, born in 1989, claims impairments due to arthritis in her knees, obesity, bipolar disorder, depression, and anxiety. Plaintiff has a high school education and employment history of unskilled labor, such as a fast food restaurant cashier. She claims an onset date of February 1, 2007.

At the time of her hearing, Lang was 21 years old (R. 26). She alleged disability due to back pain, thoracic segmental dysfunction, bilateral knee pain, bipolar disorder, personality disorder, anxiety, obstructive sleep apnea, insomnia, obesity, migraines, irritable bowel syndrome, arthritis, and a blood clot in her leg (R. 26). Plaintiff testified that she worked as a cashier doing sales and stocking in 2008 in Arizona but stopped worked because she ended up in the hospital and eventually moved to New York (R. 26). She currently lives alone, travels either by bus or by rides from her mother (R. 26). When depressed, plaintiff did not do much and management of personal care got difficult (R. 26). When not depressed, plaintiff called her

---

[2] References noted as "(R.___)" are to the certified record of the administrative proceedings.

friends, went out to dinner, and attended church (R. 26). Since 2009, Lang had been in constant transition and had difficulty adjusting to the changes (R. 26). Prior to moving into her apartment, she had moved from her friend, her sister, and her mother's homes, and to emergency housing because of the "situations with her mother" (R. 26).

## MEDICAL AND VOCATIONAL EVIDENCE

The ALJ found that plaintiff has multiple impairments (described below) but on the whole they were not sufficiently severe enough to be an impairment (R. 26). The ALJ found that plaintiff had impairments for arthritis in her knees, bipolar disorder, depression, anxiety, and obesity (R. 23). The ALJ found that plaintiff did not have an impairment or combination of impairments that meet or medically equals a listed impairment in the Social Security regulations (R. 24-25). First, plaintiff complains of deep vein thrombosis in her right leg, but this diagnosis was recent relative to her application and the ALJ concludes was not a disability (R. 23). As for Lang's knees, she had surgery on her left knee in January 2009 and she complained of pain after the surgery. The ALJ notes that Dr. Bradley Williams notes following that procedure (from January 29 to May 5, 2009) noted that plaintiff did very well after the surgery, that she had a pain level of only 3 on a scale of 1 to 10 (with 10 being severe pain) (R. 26-27). The ALJ factored in plaintiff's obesity, with her height and weight stated in her brief as 5'4" and 260 pounds (R. 26, 56; cf. Docket No. 13, Pl. Memo. at 4; R. 452 (vital statistics as of Jan. 29, 2009)), in whether her impairments were severe (R. 25).

As for her depression, anxiety, and other mental impairments, the ALJ concludes that these impairments did not meet the "paragraph B"[3] criteria, 20 C.F.R. pt. 404, Subpart P, Appx. 1, listing 12.04, 12.06, (R. 24-25), needing to show a marked limitation, that is more than moderate but less than extreme (R. 24). Plaintiff only having mild restriction of activities of daily living; and moderate difficulties in maintaining social functioning or in maintaining concentration, persistence, or pace (R. 24), with two episodes of decompensation (id.). Lang did not have at least two "marked" limitations or one "marked" limitation and repeated episodes of decompensation to meet the paragraph B criteria (R. 25). Plaintiff also did not have medical evidence to satisfy "paragraph C"[4] criteria, id., listing 12.04, 12.06. for repeated episodes of decompensation, evidence that the claimant would suffer an episode with a minimal increase in mental or life demands, or the inability to function outside of a highly supportive living arrangement or outside of plaintiff's home, since plaintiff suffered episodes with only a minimal increase in mental or life demands or an inability to function outside of her home or a structured environment (R. 25). The ALJ concludes that the record did not support plaintiff's claims of depression or anxiety (R. 27), noting that her Global Assessment of Functioning ("GAF") was in the range of 72 to 82, scores indicative of no more than a slight impairment in social, occupational, or school functioning (R. 27). Lang had two or three psychiatric treatments and she returned to baseline functioning when she was treated with medication, but decomposed after not complying with medication (R. 27).

---

[3]Marked restriction of activities of daily living; marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace, see R. 24.

[4]Repeated episodes of decompensation, each of extended duration, that is three episodes within a year or an average of an episode every four months, see R. 24.

The ALJ found that Lang's medically determinable impairments caused the alleged symptoms but did not credit her as to her claimed intensity, persistence, and limiting effects of these symptoms upon her (R. 28). The ALJ did not give any weight to the assessment of nurse practitioner Ann Marie Paser (cf. R. 729-33) since the ALJ did not deem her to be an acceptable medical source (R. 28), since (even if credited) her findings were largely inconsistent with the assessment of Dr. Harold Figueroa who treated plaintiff (id.). But the ALJ did consider Paser's findings, as well as Dr. Jeff Roach, Ph.D., who evaluated Lang five years before, as medical evidence (R. 28).

The ALJ concludes that Lang's physical and mental impairments do "impose significant functional limitations on her ability [to] perform basic work activity," but she overstated her functional limitations and the ALJ found that plaintiff could perform a range of sedentary work (R. 28). Where medical evidence corroborated plaintiff, the ALJ made accommodations in the type of sedentary work she could perform (R. 28). The ALJ found that plaintiff could perform a residual functional capacity for sedentary work with restrictions regarding pushing or pulling or using foot controls with her lower left extremity; only occasional use of ramps and climbing stairs; never climbing ladders, ropes, or scaffolds; only occasional balancing, stooping, kneeling, crouching, and crawling; avoid hazards (such as moving machinery and unprotected heights) (R. 25). The ALJ found that plaintiff should be limited to simple, routine, and repetitive tasks and that she requires a low-stress job with only occasional decision-making and occasional changes in the work setting (id.). Her residual functional capacity also would limit her interaction with the public, coworkers, and supervisors (R. 25-26). The ALJ concluded that plaintiff could not return to her past relevant work as a fast food worker, cashier, or deli worker (R. 29). The

vocational expert opined that a hypothetical claimant in plaintiff's situation could work as an addresser, ticket checker, and surveillance monitor, all occupations in the national and regional economy of New York State (R. 29-30).

The ALJ then concluded that Lang was not disabled (R. 30).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. <u>See</u> 42 U.S.C. § 405(g); <u>Rivera v. Sullivan</u>, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. National Labor Relations Bd.</u>, 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

6

The plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to establish a mental impairment that meets those listed in the Social Security regulations listings 12.04 (for affective disorders) or 12.06 (for anxiety related disorders), the

claimant needs to show medically documented findings of the mental disorder, see, e.g., 20 C.F.R. Part 404, Subpart P, Appx. 1, listing 12.04, paragraph A, and marked restriction of activities of daily living; marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace, id., paragraph B, or Repeated episodes of decompensation, each of extended duration, that is three episodes within a year or an average of an episode every four months, id., paragraph C (see R. 24).

In order to determine whether an admitted impairment prevents a claimant from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, Lang argues that the step 3 findings of the ALJ are not supported by substantial evidence. In particular, the mental residual functional capacity assessment finding of the ALJ was not supported by substantial evidence (Docket No. 13, Pl. Memo. at 1, 8-11). Lang points to the findings of nurse practitioner Ann Marie Paser which found that Lang had a poor

ability to deal with the public, to deal with work stress, and maintaining attention or concentration, while having fair abilities to relate to co-workers, interact with supervisors, function independently, and relate predicably in social situations. These symptoms were found to limit her concentration and ability to focus. (R 731-32; Docket No. 13, Pl. Memo. at 2.) She also faults the credibility assessment as not being supported by substantial evidence (Docket No. 13, Pl. Memo. at 1, 11-14). Finally, plaintiff concludes that the vocational expert's testimony (based upon the evidence discussed above) cannot be supported by substantial evidence, making the hypothetical questions posed to the vocational expert incomplete (id. at 1, 14-15).

I.      Mental Disorders

        Lang first argues that the ALJ erred in giving Paser's opinion no weight because she was not an appropriate medical source (Docket No. 13, Pl. Memo. at 8; cf. R. 25, 28). Plaintiff argues that Social Security regulations allow the ALJ to consider the opinion evidence from "other sources," SSR 06-3p, such as nurse practitioners. As she argues in her Reply, the nurse practitioner's information (while not acceptable medical source) "may be based on special knowledge of the individual and may provide insight into the severity of the impairment and how it affects the individual's ability to function" (Docket No. 17, Pl. Reply Memo. at 4), see also 20 C.F.R. §§ 404.1513(d), 416.913(d).

        Defendant Commissioner responds that Paser's GAF score of 50 when examined in February 2010 was wholly unsupported by the examination noted by Paser (Docket No. 12, Def. Memo. at 22-23; Docket No. 16, Def. Reply Memo. at 2-3). While the ALJ properly did not accord Paser as an acceptable medical source, defendant argues that the ALJ appropriately

considered Paser's records for their probative value and correctly found that Paser's "relatively benign evaluation results . . . failed to support Ms. Paser's extremely limiting assessment" (Docket No. 16, Def. Memo. at 23).

The issue thus is whether Paser's findings and opinion should have received higher credence, essentially up to the controlling weight given to the medical opinions from treating sources that are acceptable medical sources, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (Docket No. 16, Def. Reply Memo. at 2 n.1), despite the fact that she is not an acceptable medical source. The Social Security regulations allow the ALJ to use other sources beyond acceptable medical sources (such as a licensed physician, e.g., 20 C.F.R. § 404.1513(a)(1)); the ALJ "may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work," id., 20 C.F.R. § 404.1513(d). Expressly included among the acceptable other sources are nurse practitioners, id. § 404.1513(d)(1) (as a medical source not listed in § 404.1513(a)). But even if Paser's opinion is to be given heightened credence, the ALJ did consider it and found that Paser's opinion was not supported by her examination findings.

The record here shows that plaintiff has only two episodes of decompensation without more than mild limitations. Following psychiatric treatments and when compliant, plaintiff returned to baseline functioning (R. 27).

II.     Credibility Assessment

The ALJ found incredible plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms, overstating her functional limitations (R. 28). Plaintiff faults the ALJ's analysis since the comparison to the residual functional capacity is inappropriate as a matter of law (Docket No. 13, Pl. Memo. at 11-12), see Caternolo v. Astrue, No. 11CV6601,

2013 WL 1819264 (W.D.N.Y. Apr. 29, 2013) (Telesca, J.); Ubiles v. Astrue, No. 11CV6340, 2012 WL 252772 (W.D.N.Y. July 2, 2012) (Telesca, J.). Defendant retorts that the ALJ first went through Lang's medical and other evidence before concluding that her credibility was suspect (Docket No. 16, Def. Reply Memo. at 4).

The ALJ was referring to her assessment of Lang's functional capacity (R. 24-28) in concluding that Lang was exaggerating the severity of her impairments. The ALJ was not relying upon her conclusion of what plaintiff's residual functional capacity is to test if plaintiff is consistent with it.

III.     Vocational Expert

Plaintiff faults the ALJ in posing hypotheticals to the vocational expert based upon flawed and incomplete premises (Docket No. 13, Pl. Memo. at 14). The ALJ posed a hypothetical of a claimant similar to plaintiff, with the residual functional capacity the ALJ later found (R. 71-72). Defendant contends that plaintiff believes the hypothetical was defective because it did not mention the assessment of nurse practitioner Paser (Docket No. 16, Def. Reply Memo. at 8). Defendant concludes that the hypothetical question need not include Paser's assessment or plaintiff's subjective complaints not deemed credible by the ALJ (id. at 9). In reply, plaintiff questions the vocational expert pointing to the occupation of surveillance system monitor as being an odd choice given Lang's condition (Docket No. 17, Pl. Reply Memo. at 4) and the parimutuel ticket checker was too stressful to be an appropriate occupation (id. at 5).

Hypothetical questions to a vocational expert may be used, provided that the questions incorporate the full extent of claimant's physical and mental limitations, Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983) (Docket No. 16, Def. Reply Memo. at 9). Given the

conclusions above about the validity of Paser's finding and plaintiff's credibility, the ALJ did not err in adding these factors in the hypothetical posed to the vocational expert.

IV.    Plaintiff's Other Physical Impairments

Finally, plaintiff has not raised objections to the ALJ's findings as to her physical impairments. Essentially, the ALJ concluded that plaintiff has impairments, but that they were not so severe as to render Lang disabled, and the ALJ devised a residual functional capacity to address her less than disabling impairments.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **ADOPTED**. Defendant Commissioner's motion for judgment on the pleadings (Docket No. 12) should be **granted** and plaintiff's motion for similar relief in her favor (Docket No. 13) should be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the</u>**

**recommendations contained herein.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
July 24, 2013

13